Lyon, Special J.,
delivered the opinion of the court.
This bill was filed in the chancery court at Tazewell to set up and foreclose a mortgage. On the hearing, the Chancellen dismissed the bill on the plea of the statute of limitations, and ■the complainants have appealed to this court to reverse that decree.
The facts presented by the record and necessary to a proper understanding of the grounds of this decision, are succinctly these:
William Norvell of Claiborne county, being in straightened circumstances, and his land having been sold at execution sale, applied to Thomas McLain, the ancestor of complainants, for relief. On the 29th December, 1824, they entered into a written agreement under their seals, attested by two subscribing witnesses, by which Thomas McLain obligated himself to advance money to the execution creditor of Norvell, sufficient to discharge his debt and redeem the land; and also to hold up certain notes or obligations for money which McLain then held on said Norvell, until the time for redemption of his land should expire; and in the event Norvell failed pay McLain, the land was to become McLain’s at the expiration of two years. Before the time of redemption had elapsed, McLain paid the debt for which Norvell’s land was sold, and took a deed in his own name from the coroner of the county,which is however admitted to be void. He also forbore to press his own claims for two years, and thus substantially complied with his contract with Norvell of the 29th December, 1824. During the years 1825-6, McLain made further advances of money to Norvell, who was then engaged in litigation with his son James C. Norvell in regard to their respective rights to some negroes. The parties MpLain and William Norvell, entered into a second written agreement; in which it was stipulated that if Wm. Norvell was successful in this contest with his son, McLain was to be re *50 imbursed for his latter advances of money by a sale to him of one or more of the negroes in controversy; but if he failed in his suit, his land was to be held liable for these advances. Wm. Norvell died pending this suit, and his administratrix, in whose name it was revived,was unsuccessful in the result, and the debts due McLain remained unpaid. It also appears from the record, that about the year 1826 this land was sold for taxes, and McLain having purchased the claim of the vendee at this sale, received a deed for the land from the Sheriff of Claiborne county, and by some agreement or understanding with the widow and heirs of Norvell and others, entered into the possession of the land. It seems that he had after this time several contests in the courts of law of Claiborne county for the possession of the land, in which it appeared his legal titles were of no validity — amongst othei’s, with the defendant Joseph Ferrell. This man had or pretended to have obtained a judgment in the circuit court of Claiborne county against Mary Norvell as administratrix of Wm. Norvell,' and having caused execution to be issued and levied on this land, he purchased it at the execution sale for the sum of $2 50. By some means or other, and most probably by collusion with the tenants of McLain, he obtained possession of the greater part of this tract of land in the year 1834, and about the 1st of January, 1836, he obtained possession of the residue, and continued to hold it under his deed from the Sheriff, purporting to convey to him a title in fee, until 1841 when he sold and conveyed it to his co-defendant, John Kincaid, who continued to hold and claim it adversely to the time of the institution of this suit.
The record shows that Thomas McLain, though a man of some wealth and of considerable business relations with the community, was wholly illiterate, incapable of reading or writing his name, and of intemperate habits. In order to conduct his business and to prepare and preserve his papers, *51 he was under the necessity of employing a clerk and agent, in this capacity he engaged the services of Ralph G. Norvell, one of the sons of Wm. Norvell, who remained in his employ some twelve or eighteen months, commencing about the year 1830. While thus confidentially employed, Ralph G. Norvell fraudulently abstracted from the possession of McLain the two written agreements between McLain and Wm. Norvell, which have been heretofore mentioned; neither of which had been proven or registered in Claiborne county. These papers were subsequently delivered by him to a man named English to be kept for him, who shortly thereafter carried them .with him to the State of Missouri, where he removed. Thomas McLain died in the year 1842. He never knew in what manner or by whom his papers had been abstracted, or into whose possession they had gone. He did not attempt to assert his right, notwithstanding he had notice of Ferrell’s adverse claim and possession under them, but left Ferrell in the quiet possession of the land. The guardian of complainants having ascertained these fact, and finally obtaining possession of the paper of the 29th December, 1824, exhibited this bill on their behalf in the Chancery Court at Tazewell, in April, 1845, to set up and forceclose. this mortgage. The bill charges, amongst other things, that defendant Ferrell was fully apprized of the existence of these written agreements between Wm. Norvell and Thomas McLain, and of the manner in which they had been taken from his possession. It further charges, that said Ferrell is not a bona fide creditor of Wm. Norvell, and that the judgment which he obtained against Norvell’s administra-trix was fraudulent and collusive. It also charges, that Kin-caid was affected by notice of the existence of McLain’s lien, and that he was not a bona fide purchaser without notice. The answers deny broadly, notice of the existence of these liens; and the one relies upon the fact that he was a creditor and is not effected by notice, and both, that they were purchas *52 ers for a valuable consideration without notice, and plead the statute of limitations. It is sufficient to observe, that the proof in the record not only demonstrates that Ferrell had knowledge of McLain’s liens before his purchase, but that he was perfectly cognizant of the manner in which the papers had been taken from his custody — that they were exhibited to him by Ralph G. Norvell — that he had a copy of the paper of the-29th December, 1824- — that he was present at a consultation with some lawyers, upon the effect and validity of this paper— that he was aware that it was pronounced to be a valid mortgage.to McLain, and in short, was acting in collusion with Ralph Norvell in the whole affair. The evidence is also highly persuasive, if not conclusive, that the judgment under which he caused the land to be sold was fraudulent and collusive. And we would also hold, were it necessary, that- defendant Kincaid was so far affected by notice of some outstanding incumbrance, as to have put him on enquiring into the title.
Under these circumstances, is the plea of the statute of limitations effectual to bar the relief sought by the complainants ? And we are constrained to hold that it is.
It is urged in support of this bill, that as this mortgage formed the foundation of the complainants’ cause of action, and was a muniment of title, its suppression or concealment by fraud ought to interpose a bar to the operation of the statute equally, as a fraudulent concealment of the cause of action. It is certainly true, that as courts of equity are not within the words of the statutes limiting the time of suing on the several forms of action at law, and only apply the statutes by a rule of decision in analogy to the courts of law, they have allowed some exceptions to prevail against the ordinary application of these statutes. The great and leading exception is in case of direct technical trusts over which courts of equity have exclusive cognizance. Another exception, which has been fre- *53 quenlly admitted by this court, is in the case of a fraudulent concealment of the cause of action until the fraud is discovered. Reeves vs. Daugherty, 7 Yer. 233. Smart, and wife vs. Waterhouse, 10 Yer. 105; 5 Hum. 270-4. But this caséis not within either of these exceptions, and we are not disposed to extend this principle or rule any further. There is here no trust- and no concealment of the cause of action. It is but a fraudulent abstraction of the written evidence of the party’s right or title. The right itself was neither lost, suppressed or concealed. nor even seriously jeoparded, nor all the evidence on which it rested. Had the ancestor of complainants thought proper to have applied to a court of equity and invoked its familiar jurisdiction in setting up and establishing instruments lost or destroyed by fraud or accident, his rights would have been amply secured. But he did not do so. But chose rather to slumber on his rights until an adverse interest and possession of which he was fully aware, though begun in fraud is perfected by time. Should a court of equity now interfere to relieve against the consequences of negligence or ignorance ? Surely not! There is no principle of law which would sustain it, and its tendency would be mischievous.
But, secondly, the bar of the statute, by virtue of the 1st sec. of the Act of 1819, ch. 28, (N. & C. 442,) is complete and conclusive. By that Act, any person or persons, their heirs or assigns, who have been in possession of any lands, tenements or hereditaments, granted by this State or the State of N. Carolina, for seven years, claiming and holding under a deed, grant, devise or other assurance of title, purporting to convey an estate in fee simple, are protected in such possession to the extent of the boundaries described in such assurance of title. And all persons who shall have any claim or title to such lands, who shall fail to enforce their claims by suit in law or equity effectually prosecuted for seven years, shall be forever barred *54 and an indefeasible title in fee simple is thereby vested in the persons so holding for the term of seven years.
By this statute not only is the remedy barred when there has been a failure to sue as prescribed, but the right is extinguished also, and a title vested in the adverse possessor. It is sufficient, if a hostile possession is taken and held of granted lands for seven years under an assurance of title purporting to convey a fee, the possession is protected, no matter how groundless the possession may have been at first. Wallace vs. Hannum. 1st. Hum. 448. Courts of equity equally with the courts of law, are bound by the provisions of this Act, and no exceptions not contained in the statute itself, can be engraft-ed upon it. 2 Yer., 288.
The decree of the Chancellor is correct, and must be affirmed.
Other points which have been raised in the record and discussed at the bar, we have not thought it necessary to be noticed.